# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

ALTICOR INC. and AMWAY CORP.,

        Plaintiffs,

    v.

UMG RECORDINGS, INC., CAPITOL
RECORDS, LLC, SONY MUSIC
ENTERTAINMENT and WARNER MUSIC
GROUP CORP.,

        Defendants.

CASE NO.   6:14-CV-542-ORL-37-DAB

Hon. Roy B. Dalton, Jr.
Mag. Judge: David A. Baker

## MOTION AND SUPPORTING MEMORANDUM OF DEFENDANT UMG RECORDINGS, INC. TO COMPEL PLAINTIFFS ALTICOR INC. AND AMWAY CORP. TO PRODUCE DOCUMENTS AND TO ANSWER INTERROGATORIES

Defendant UMG Recordings, Inc. ("UMG") moves under F.R.C.P. 37 for an order compelling Plaintiffs Alticor Inc. and Amway Corp. ("Plaintiffs" or "Amway")[1] to respond to and produce documents responsive to UMG's First Sets of Requests For Production of Documents and Tangible Things ("RFPs") and First Sets of Interrogatories, as amended and supplemented on or about February 17, 2015.[2] Pursuant to the Court's directive, the discovery requests are attached hereto as an appendix. Specifically, Amway moves to compel responses to the following: RFP Nos. 5-7, 9-19, 21-31, 42, 43, 46-52, 54-59, 61-63, 65, 75; and Interrogatory Nos. 1-4, 6, 10.

---

[1] Plaintiffs refer to themselves collectively as "Amway." First Amended Complaint ("FAC") at pg. 1. Their separate responses to the discovery at issue were essentially identical. Defendants are collectively referred to in the FAC and herein as the "Record Companies."

[2] Because the responses of Amway and Alticor are substantially the same, UMG treats them as such in the following discussion.

**INTRODUCTION**

At issue here are discovery requests that go to the heart of the claims in this case, namely that Amway directly, contributorily, and vicariously infringed hundreds of copyrighted sound recordings by including them, without permission, in promotional videos that were essentially commercials for Amway's business.  Broadly, the requests at issue seek basic documents and information regarding Amway's knowledge, right and ability to control the infringing works; Amway's procedures, policies, rules, and guidelines for reviewing promotional material that might contain copyrighted works; Amway's enforcement of its own trademark and intellectual property rights; and other relevant categories described below.

This Court's Order dated February 10, 2015, cautioned Plaintiffs "that general objections which serve only to obfuscate the subsequent responses will be stricken.  Plaintiffs' response should indicate what is going to be produced and should include documents that are under the control of a Plaintiff, including documents of a subsidiary, affiliate, or other similar association." February 10, 2015 Order and Notice of Hearing.  Plaintiffs have failed to heed this advice. Instead, their amended and supplemental responses add ***additional and new*** objections that substitute cosmetically for those general objections improperly asserted in its prior responses. Thus, in a majority of their responses, Amway adds and repeats ***multiple*** qualifications and objections that are sometimes internally inconsistent and that in vague terms qualify (or eliminate) their response, leaving what they will and will not produce completely unclear.  RFP 10 is illustrative:

All AUDIOVISUAL WORKS that AMWAY received or collected in connection with any submission, review, or approval process.

> **"RESPONSE**:
>
> "In addition to non-duplicative non-privileged copies of the audiovisual works identified in the Schedule, audiovisual works

2

containing sound recordings *for use in the United States* submitted for review from 2010 through October 2014 are being produced on a rolling basis.

"Alticor objects to the request on the ground that the request is overbroad to the extent it calls for audiovisual works that are *(a) not at issue in this case, (b) unrelated to any copyrights of any Defendant, (c) unrelated to a U.S. copyright in sound recordings, (d) from countries outside the United States from which no audiovisual work on the Schedule was apparently created or uploaded, or (e) dated prior to the year in which an audio visual work on the Schedule was first apparently created or uploaded in a country*.  See Middle District Discovery (2001) at §III.A.1.

"Alticor also objects to this request to the extent it seeks production of documents *located outside of the United States* on the ground that the scope of the request is not proportional to the needs of the case, considering the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery relative to its likely benefit, particularly given there has been no prima facie showing of an infringement of a U.S. copyright by audiovisual works created and uploaded to the Internet outside of the United States.

"Alticor objects to production of any responsive documents that are protected as privileged.  Any such documents withheld on the basis of privilege will be identified on a privilege log as required by Fed.R.Civ.P. 26(b)(5) unless otherwise agreed to by the parties, and on a date to be agreed upon by the parties."

Generally, these boilerplate objections, or variations thereof, are the only objections.  Not only do the objections "serve to obfuscate," but they are unsupported legally and factually.  Nor does Amway claim that the discovery sought is irrelevant or unavailable.  Therefore, Amway should be ordered to fully respond without objection to these requests and interrogatories.

## I.    MEET-AND-CONFER PROCESS AND STATEMENT OF RELEVANT FACTS

The parties discussed each discovery request during five hours of meetings in Court on February 10.  Amway's response was that their lawyers would discuss the issues with Amway. (These issues that had been discussed many times before.)  On February 17, Amway served its Amended and Supplemental Responses.  There followed two additional meet-and-confer

sessions, each lasting two hours.  Only UMG offered compromises.  Amway flatly refused to identify what it would produce and what it refuses to produce.

Central to this case are hundreds of Amway promotional videos that infringe the Defendants' (the "Record Companies") copyrights in sound recordings, including copyrights in some of their most iconic and valuable music.  Even without discovery, the Record Companies have so far identified over 600 different copyrighted sound recordings used in hundreds of videos that were uploaded to the Internet, made publicly available, and viewed millions of times. These videos were integral to Amway's marketing and promotion strategy, which has focused on online social media to recruit, motivate, and sell Amway products.  The videos frequently include the Amway name, trademark or logo -- which may not be used without Amway's express permission -- and depict Amway events, venues, and high-level Amway officials.

Amway itself makes and performs infringing videos, and also encourages, facilitates, and instructs those it controls in its multi-level marketing empire to do so.  Amway has absolute legal and practical control over its business and the marketing of its brand and products, has the ability to stop the infringement, and derives profits from the increase in fees paid by newly recruited distributors, the increased sales of its products, and sales of tickets to Amway events, all resulting from the infringement.  Plaintiffs are *direct* copyright infringers as to those infringing videos that they created themselves.  Plaintiffs are also *secondarily* liable as vicarious and contributory infringers because (i) they supervise and control and profit from the increased revenue and brand recognition resulting from the infringing videos made by their distributors; and (ii) they have actual or constructive knowledge of the infringing videos.

4

Plaintiffs filed a preemptive complaint seeking a declaration that the unauthorized use of the Record Companies' sound recordings is not copyright infringement. Plaintiffs also seek damages for purported breaches of a 1998 Settlement Agreement (the "Agreement").[3]

A.     **Plaintiffs' Business**

Plaintiffs operate and control a closely held, global, multi-level marketing empire through a convoluted (and changing) corporate structure.[4] Alticor is the ultimate parent company responsible for Amway's worldwide operations. Plaintiffs enlist, contract with, and derive revenues from so-called "independent business owners" ("IBOs") who purchase "Amway Brand" products. FAC ¶¶ 17-19. *See, e.g., Pokorny v. Quixtar, Inc.*, 601 F. 3d 987, 990-991 (9th Cir. 2010). Plaintiffs control and monitor IBO conduct through rules, regulations, and contracts, and have the absolute right to terminate IBOs at any time. Declaration of James Berkley ("Berkley Decl."), Exs. 45-48; *see also generally id.*, ¶¶ 2-64 and Exs. 1-44, 49-59. By paying membership fees to Amway, the IBOs obtain the right to purchase Amway products, ostensibly for resale. FAC ¶19. The IBOs in turn recruit other IBOs to purchase, market, and sell Amway products. *Id.* In Amway's terminology, higher-level IBOs are "upline" to the sponsored IBOs beneath them, who constitute their "downlines." *Id.* IBOs may purchase Amway products from their "uplines" or directly from Amway. Amway also permits IBOs to create "stores" that reside on Amway's website. Berkley Decl. Ex. 44. An Amway IBO who recruits a new reseller receives "bonuses" based on the purchases of that recruit, as does the IBO

---

[3]  Judge Dalton recently granted Defendants' second motion to dismiss Amway's three putative tort claims, leaving only contract and declaratory relief claims. The Record Companies have filed counterclaims for direct infringement, secondary infringement, and breach of contract. Pursuant to this Court's order, the Record Companies previously provided Amway with a draft of the counterclaims.

[4]  By way of example, the Amway Corp. that was subject to the previous lawsuit filed in 1996, later became Quixtar, and then later Alticor. The Amway Corp. that is a Plaintiff in this lawsuit apparently is a subsidiary of Alticor.

who recruited the recruiter, and so on up through the official Amway "Lines of Sponsorship."

FAC ¶19; Berkley Decl. Ex. 46 at pp. A1-A3.

IBOs rely on "tools" or "business support materials" ("BSM"), which Amway approves,

to solicit prospects (new IBOs) and to educate, motivate, and train IBOs, how to recruit new

IBOs, and how to sell Amway products.  Berkley Decl. Ex. 46 at pp. C3, D22; Exs. 52-53.  BSM

is sold by, among others, Amway-designated "Approved Providers," and is distributed at

conferences designed to attract new recruits and to motivate existing IBOs.  *See, e.g., id.,* Exs.

51-52 . Many of Amway's highest-level IBOs control powerful BSM-providing companies.

## B.     The History Of Amway's Infringing Conduct

In 1996, in *Arista Records, Inc., et al. v. Amway Corp., et al.*, M.D. Fla., No. 96-175-CV-

ORL-18, three of the four Record Companies or their predecessors or affiliates sued Amway and

others for infringing of over 100 sound recordings reproduced in Amway promotional video and

audio tapes and distributed to promote Amway's business and products.  FAC ¶21.  In 1998,

Amway paid $9 million to settle those claims.  FAC ¶23; Berkley Decl. Ex. 59; *see also* Docket

No. 66-1 at ¶1.  The parties entered into a Settlement and Release Agreement that provided

among other things that Amway has an obligation to cooperate to limit infringement and to

investigate claims of infringement.

In November 2012, the Record Companies notified Amway of hundreds of new and

equally infringing works.  This time, the Record Companies' copyrighted recordings were used

in promotional videos that Amway and its IBOs and BSM-suppliers posted to the Internet and

made available to the public.  FAC ¶¶25-27.  The Record Companies continued to locate

additional infringements and continued to send notices to Amway.  Amway and its distributors

never sought permission or licenses to use the Record Companies' recordings.  The known

infringing videos likely represent only part of a systemic practice of copyright infringement.

The Settlement Agreement required Amway to provide the Record Companies with a report about the claimed infringements.  FAC ¶26.  The purpose of the report was to permit the Record Companies to determine whether to pursue claims.  However, Amway's "report" was woefully inadequate for its purpose, omitting much of the information that the Agreement required.  (The "investigation" did not identify a single infringing video that the Record Companies had not located, even though later events proved that many additional infringing videos existed.)  Nevertheless, pursuant to the Agreement, the parties participated in a three-day mediation (FAC ¶¶30-31).  The final session took place on April 3, 2014 and ended when Amway abruptly left.  On the morning of April 4, 2014, Amway preemptively filed this action.

## II.    ARGUMENT

### A.    Standard For Granting A Motion To Compel

"The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result."  *Oliver v. City of Orlando*, 2007 U.S. Dist. LEXIS 80552, at *4 (M.D. Fla. Oct. 31, 2007) (Baker, J.).  "The scope of discovery under Rule 26(b) is broad and includes 'discovery regarding any matter, not privileged, which is relevant to the claims or defense of any party involved in the pending action.'"  *Gonzalez v. Etourandtravel, Inc.*, 2014 U.S. Dist. LEXIS 40180, at *4 (M.D. Fla. Mar. 26, 2014) (citing *Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947)).

### B.    While Purportedly Eliminating Their Obfuscatory General Objections, Plaintiffs Have Repeated Them In Numerous Specific Responses

Amway's responses repeatedly and indiscriminately include the following objections (or a non-substantive variation thereof):  (1) Twenty responses to the RFPs and several interrogatories  exclude "documents located outside the United States."  (2) Thirty-seven RFP responses and several interrogatory responses object, in words or substance, "to the extent [the

request] seeks production of documents located outside of the United States on the ground that the scope of the request is not proportional to the needs of the case, considering the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery relative to its likely benefit, particularly given there has been no prima facie showing of an infringement of a U.S. copyright by audiovisual works created and uploaded to the Internet outside of the United States."  (3) Eighteen RFP responses and a number of interrogatory responses limit discovery to "those countries from which an audiovisual work on the Schedule [of Infringing Videos thus far identified by UMG] was **apparently** created or uploaded" (emphasis added). (4) Thirty-five RFP responses and a number of Interrogatory responses exclude discovery "from countries outside the United States from which no audiovisual work on the Schedule was apparently created or uploaded."  (5) Eighteen RFP responses and several interrogatory responses limit discovery to "beginning in the year in which an audiovisual work on the Schedule was first apparently created or uploaded in that country."  (6) Twenty-three RFP responses and several interrogatory responses exclude discovery of audiovisual works "that are not at issue in this case."  (7) Twenty-three RFP responses and three interrogatory responses exclude production  "unrelated to any copyrights of any Defendant."  (8) Twenty-two RFP responses and certain interrogatory responses exclude discovery of documents "unrelated to a U.S. copyright in sound recordings."  (9) Thirty-five RFP responses exclude documents "dated prior to the year in which an audio visual work on the Schedule was first apparently created or uploaded in a country."  Six RFP responses and three interrogatory responses limit discovery to "sound recordings for use in the United States."  (10)  Nine RFP responses and three interrogatory responses limit the time period of discovery from 2010 to October 2014.

 Amway's asserted grounds for these shotgun objections and limitations are not relevance or that the material is not within its "possession, custody or control," but purported overbreadth

and vague and factually unsupported claims of undue burden. Yet, Amway's responses provide not a shred of explanation or support for these assertions. Amway also fails to explain how it determined the self-imposed parameters or what discovery it is withholding. Just as with Amway's previous "General Objections," "[s]uch non-specific objections operate to render the producing party the final arbiter of whether it has complied with its discovery obligations … because the requesting party lacks sufficient information to understand either the scope of the objection or to frame any argument as to why that objection is unfounded." *United States CFTC v. Am Derivatives Corp.*, 2007 U.S. Dist. LEXIS 23681, 8-9 (N.D. Ga. Mar. 30, 2007).[5]

1. **Refusal To Produce "Documents Located Outside the United States"[6]**

This limitation is present in Amway's responses to the following:  RFP Nos. 5-7 (policies, rules, regulations, requiring submission and Amway's review of BSM, including audio visual works); 23-26 (Amway's rules, policies, regulations regarding use of sound recordings, use of copyrighted works, copyright infringement, and use of social media); 30, 31 (use of recordings in works concerning Amway and the role of use of sound recordings in audiovisual works on the Internet and social media in Amway's business strategy or financial results); 42 (use of audiovisual works or sound recordings at any meetings, conventions, conferences, or seminars attended by Amway representatives, IBOs, or BSM organizations); 47-50 (identity of, and agreements with, Amway-accredited BSM providers and approval process and qualifications re same); 54-57 (communications between Amway and certain identified persons and entities involving the claims regarding the Record Company claims, this litigation, or the use of sound recordings in audiovisual works); 65 (documents constituting rules, directives, etc., to prevent or

---

[5] In addition, in a number of responses, Amway (1) limited or narrowed the scope of the request in its response without explicitly stating it was doing so or why; and/or (2) responded by agreeing to produce documents different from those that were the subject of the request.

[6] Amway's objections are pervasive and fail to apprise UMG of what Amway will or will not produce, making it impracticable to discuss each request separately.  Below, UMG summarizes the categories to which Amway interposes the objections or limitations.

limit infringement of sound recordings after the Settlement Agreement by IBOs, BSM

Organizations, or Amway); Interrogatory Nos. 1-3 (audiovisual works containing sound

recordings that Amway reviewed before relevant time period; audiovisual works containing

Amway name, logo, trademark, etc.; person, entities, etc. who have been disciplined as a result

of unauthorized use of Amway trademark or unlicensed use of sound recordings).

 "The courts have frequently required a business entity party to produce documents in the

possession of its parent company, and conversely have required the parent to produce documents

possessed by its subsidiary" or in the possession of their affiliates.  7-34 Moore's Federal

Practice-Civil, § 34.14 (Matthew Bender, 3d ed.) (citations omitted).  Following this hornbook

law, this Court's order requires that "Plaintiffs' response should include documents that are

under the control of a Plaintiff, including documents of a subsidiary, affiliate or other similar

association." February 10, 2015 Order and Notice of Hearing.  Nevertheless, Amway has

unilaterally excluded and refused to produce responsive "documents located outside the United

States."

Their response to Request No 5, quoted in pertinent part, is illustrative:

> All DOCUMENTS that constitute, evidence, refer to or reflect policies or
> regulations requiring BSM, including AUDIOVISUAL WORKS, to be submitted to
> AMWAY and/or approved by AMWAY.

> **RESPONSE:**
> In the letter dated October 17, 2014, UMG narrowed this request as follows:
> "UMG is willing to limit the requests to cover (i) documents that constitute
> procedures, policies, rules, guidelines or regulations, whether applicable in the United
> States or abroad, requiring BSM to be submitted to AMWAY and/or approved by
> AMWAY, as that term is defined by UMG, as well as (ii) documents concerning the
> drafting of those policies or regulations."[7]

> During the discovery conference held on February 10, 2015, counsel for UMG
> stated that documents identified above in (ii) do not need to be produced at this time, but

---

[7]  As noted in Amway's various responses, during the earlier meet and confer process, UMG
agreed to narrow many requests.

UMG may renew its request for such documents after receipt of the documents identified above in (i).

…

Non-privileged documents *located in the United States* responsive to (i) above constituting policies or regulations will be produced on a rolling basis for those countries from which an audiovisual work on the Schedule was apparently created or uploaded, beginning in the year in which an audio visual work on the Schedule was first apparently created or uploaded in that country. …  (Emphasis added.) [8]

In their responses to this and the other requests and interrogatories raising the same limiting objection, Amway never asserts that the salient documents are not in its possession, custody, or control, or that they are not relevant.  And Amway does not show why it would be burdensome to provide the information (especially since a large portion of these documents undoubtedly are in digital form).  Amway nowhere describes what or how many documents are located outside the United States or who possesses them.  Nor do Plaintiffs contest that they are parents or affiliates of companies located outside the United States that would have the requested documents.  Nor was the Court's Order that Amway produce documents of "a subsidiary, affiliate, or other similar association" limited to those entities located in the United States.[9]

Amway has no right to exclude documents and information located outside the United States, especially when it concedes the exact same categories of documents and information located *in* the United States must be produced.  *See, e.g., Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 472 (S.D. Fla. 2011) (collecting cases and noting that a litigant cannot hide behind "a labyrinthine group of corporations with a common parent"); *Platypus Wear, Inc. v. Clark Model & Co.*, 2007 U.S. Dist. LEXIS 94327 at *12-15 (S.D. Fla. Dec. 21, 2007) (ordering parent

---

[8]  UMG agreed to narrow this (and other Requests) to documents located in countries from which they currently believe, or in the future determine, infringing videos were created or uploaded.  Even though Amway has greater access to this information, UMG has provided a list of these countries.

[9]  Amway is a closely held company that is a self-described global business that publicly claims to control its affiliates and subsidiaries.  Plaintiffs share addresses, executives and owners with their affiliates and subsidiaries and share other resources, such as Internet domain names, with these affiliates and subsidiaries. *See* Berkley Decl., ¶¶ 3-50 & Exs. 2-43.

company based in United States to produce documents in possession of a Brazilian company, noting it could not locate any case "in which a court has found that a parent corporation did not legally control the documents of its wholly-owned subsidiary for the purposes of responding to an otherwise valid discovery request"); *Cooper Industries, Inc. v. British Aerospace*, 102 F.R.D. 918, 919-20 (S.D.N.Y. 1984) (granting motion to compel production of documents held by foreign parent); *Perini America, Inc. v. Paper Converting Machine Co.*, 559 F. Supp. 552, 553 (E.D. Wis. 1983) (ordering plaintiff to produce documents in the possession of foreign sister corporation); *Uniden America Corp v. Ericcson, Inc.*, 181 F.R.D. 302, 305 (M.D. N.C. 1998) (requiring company to obtain documents from a foreign sister corporation).

A person outside the United States who, without authorization, uploads a video to a computer server or website located in the United States is liable for infringement **under U.S. law**. See *Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1146-47 (N.D. Cal. 2011).  Likewise, a violation of U.S. law occurs where a person, wherever located, uploads an infringing work that is made available and publicly performed in the United States.  See *Foreign Imported Productions Publishing, Inc. v. Grupo Industrial Hotelero*, 2008 U.S. Dist. LEXIS 108705, at *13 (S.D. Fla. Oct. 24, 2008) ("streams" that originate abroad implicate U.S. rights when viewed in the U.S.); *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 225 (S.D.N.Y. 2002) (accord).[10]  Moreover, the Record Companies are entitled to explore whether

---

[10]   In addition, all parties, wherever located, who knowingly and materially assist U.S. infringement or who have the right or ability to supervise or control and benefitted from such infringement, are liable under U.S. law as contributory or vicarious infringers.  Plaintiffs' conduct gives rise to secondary liability for these violations of U.S. copyright law.  See *Metzke v. The May Department Stores Co.*, 878 F. Supp. 756, 760-61 (W.D. Pa. 1995) (contributory infringement where defendant's conduct contributed to infringing distribution in U.S. of infringing product made abroad).  Plaintiffs must produce information regarding foreign activity that results in violations of U.S. law.  See *Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co.*, 2003 U.S. Dist. LEXIS 68, at *16-17 (S.D.N.Y. Jan. 6, 2003) (ordering discovery related to foreign conduct).

similar, additional claims of infringement of the Record Companies' rights exist against

Plaintiffs.  *See Honeywell Int'l, Inc. v. Acer Am. Corp.*, 655 F. Supp. 2d 650, 655-56 (S.D. Tex.

2008) (in patent infringement context plaintiff "entitled to discovery concerning all reasonably

similar products"); *Fleisher v. A 1990 53' Viking Sport Fishing Vessel*, 2011 U.S. Dist. LEXIS

137618, at *7 (S.D. Fla. May 18, 2011) ("[T]he Advisory Committee Notes [to F.R.C.P. 26(b)]

approvingly cite language from a case stating that 'the Rules . . . permit 'fishing' for evidence as

they should."); Adv. Comm. Notes on 2000 F.R.C.P. Amendments ("A variety of types of

information not directly pertinent to the incident in suit could be relevant to the claims or

defenses raised in a given action.  For example, other incidents of the same type, or involving the

same product, could be properly discoverable under the revised standard.").   Such evidence

would also bear on the issues of Amway's willfulness and knowledge and knowledge of

infringement.  5 *Nimmer on Copyright* § 14.04, at 14-79) (Plaintiffs' "reckless disregard [and

thus willfulness] can be inferred from a past practice of infringing other works.").

### 2.    Improper Objections Claiming That Burden Outweighs The Benefit

In thirty-nine responses to the RFPs and in responses to a number of interrogatories,

Amway in addition objects to producing documents located outside the United States by

*paraphrasing* F.R.C.P. 26(b)(2)(C)(iii):

> "Alticor also objects to this request to the extent it seeks
> production of ***documents located outside of the United States*** on
> the ground that the scope of the request is not proportional to the
> needs of the case, considering the importance of the discovery in
> resolving the issues, and the burden and expense of the proposed
> discovery relative to its likely benefit, particularly given there has
> been no prima facie showing of an infringement of a U.S.
> copyright by audiovisual works created and uploaded to the
> Internet outside of the United States." (emphasis added)

This boilerplate objection effectively repeats Amway's previous general objection to producing documents located outside the United States.[11]   And, Amway changes and omits several of the relevant factors in Rule 26, which actually states that a court may limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."[12]

It follows that Amway's "objections" on this ground lack merit.   First, the term "not proportional to the needs of the case" does not appear in Rule 26, nor does Amway attempt to define it.   More significantly, however, Amway has not shown, and cannot show, that producing documents located outside the United States – again, likely primarily in digital form – will result in any extraordinary burden or expense, much less the type of burden or expense that would outweigh the benefit to UMG of obtaining documents highly relevant to Amway's pattern and practice of infringement.   Nor has Amway sought a protective order, as the Rule implies it must. (The applicable provision of the rule begins, "On motion …")   *See, e.g., Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) ("no mention of the Rule 26(b) factors is made in sufficient specificity to allow the magistrate and the district court, absent an abuse of discretion, to grant the motion for a protective order.   The recitation of expense and burdensomeness are merely conclusory").   *See also Josephs v. Harris Corp.*, 677 F.2d 985, 991-92 (3d Cir. 1982) ("party resisting discovery 'must show specifically how … each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive'").

### 3.      Exclusion of audiovisual and other works "not at issue in this case."

---

[11]   RFP Nos.: 5-7, 9-19, 21-31, 42, 43, 46-51, 54-57, 65, 75; Interrogatory Nos.: 2, 3, 5.

[12]   Amway did not raise this objection in its original responses or first supplemental set of responses.

This limitation is present in Amway's responses to the following:  RFP Nos.: 9-12 (Amway's process in reviewing and approving audiovisual works), 13-19 (Amway's control over its use of its name, logo, etc., in audiovisual works; communications with IBOs, BSM organizations, and others about use of audiovisual works on the Internet; Amway's licenses for, and attempts to license, sound recordings for use in audiovisual works); 24 (Amway's rules, policies, etc. regarding use of sound recordings in audiovisual works); 27, 28 (discipline imposed by Amway for infringing rights in Amway's name, trademarks, etc.); 52 (enforcement of Amway's own intellectual property rights); 54-58 (communications between Amway and certain identified persons regarding the Record Company claims, this litigation, or the use of sound recordings in audiovisual works); 61-63 (documents concerning this litigation; infringement claims against Amway); Interrogatory Nos. 1-3 (described in subsection 1, *supra*).

For example, RFP No. 12 seeks documents generated in connection with the receipt, collection, review and approval or disapproval by Amway of audiovisual works submitted by IBOs, BSM organizations, or Amway affiliates.  Among other boilerplate objections, Amway objects to RFP No. 12 by excluding from production audiovisual works "that are not at issue in this case. " The objection lacks merit.  Parties, like Plaintiffs, that systematically control and monitor uses of their own intellectual property are likely to obtain actual knowledge, or at least constructive knowledge, of the infringements at issue, particularly since these videos frequently include Plaintiffs' trademarks and trade names.  *See Cable/Home Communication Corp.*, 902 F.2d at 846 (standard for contributory infringement is "Know, or have reason to know."); *A&M Records, Inc. v. Napster*, Inc., 239 F.3d 1004, 1020 n.5 (9th Cir. 2001) (finding constructive knowledge where defendant "enforced intellectual property rights in other instances").  Because Amway requires submission and review of all audiovisual works using its name or logo, its

review of *any* such audiovisual work goes to its knowledge and ability to control infringement. And as noted above, UMG is entitled to discover other incidents of infringement.

In addition, a number of requests as to which this objection is interposed seek discovery of Amway's enforcement efforts regarding its own intellectual property. Plaintiffs are known for monitoring and actively enforcing their intellectual property rights in the Internet environment. *See, e.g.*, Complaint in *Alticor Inc. v. Schirle*, No. 12-cv-00636-RHB (filed W.D. Mich. June 15, 2012) (alleging trademark claims against IBOs for selling Amway products on the "eBay" website) (attached as Ex. 55 to Berkley Decl.). Where a company enforces its own rights or otherwise selectively controls some infringing conduct, its failure to limit analogous infringing activity is evidence of the right and ability to control such activity. *E.g.*, *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1173 (C.D. Cal. 2002); *Arista Records LLC v. Usenet. com, Inc.*, 633 F. Supp. 2d 124, 157 (S.D.N.Y. 2009). Thus, information related to Plaintiffs' enforcement of its intellectual property rights with respect to their use in audiovisual works is relevant to both vicarious liability and contributory infringement.[13]

### 4.   Exclusion of "Documents relating to audiovisual works that are 'unrelated to any copyrights of any Defendant' or 'unrelated to a U.S. copyright in sound recordings'"

This limitation was raised in the following: RFP Nos.: 9-19, 24, 27, 28, 52, 54-58, 61-63; Interrogatory Nos. 1-3, each of which has been previously summarized in earlier subsections. But Amway does not disclose what documents and information are being produced and what documents are withheld. Here, too, the salient requests and interrogatories seek information about Amway's own enforcement practices and its knowledge of infringement.[14] Thus, for the

---

[13]   The information is also relevant to willfulness: one who allows its own intellectual property to be used in infringing works has materially contributed to the infringing conduct. See, e.g., Frank Music Corp. v. Metro-Goldwyn-Mayer Inc., 886 F.2d 1545, 1553 (9th Cir. 1989).

[14]   For example, Amway interposes this objection in response to Interrogatory No. 3, which reads: IDENTIFY each and every person, entity, or organization that Amway has in any way

reasons discussed above, they  are relevant to both vicarious liability and contributory

infringement, as well as willfulness.

### 5.    Limitation to documents "for use in the United States."[15]

This unilateral limitation was raised in the following: RFP Nos.: 10-12, 14-16, 27, 28;

Interrogatory Nos.: 1- 4, 6.  All but the following have been summarized above: Interrogatory

No. 4 (procedures regarding Amway approval of BSM) and No. 6 (action taken after Settlement

Agreement to monitor infringement of sound recordings).  The response to RFP No. 10 typifies

Plaintiffs' improper limitation of discovery to audiovisual works "for use in the United States:"

> All AUDIOVISUAL WORKS that AMWAY received or collected in connection
> with any submission, review, or approval process.
> RESPONSE:
> In addition to non-duplicative non-privileged copies of the audiovisual works
> identified in the Schedule, audiovisual works containing sound recordings **for use in the
> United States** submitted for review from 2010 through October 2014 are being produced
> on a rolling basis.  (Emphasis added.)

As noted above, it is well established that a person who, outside the United States,

uploads an infringing work to a U.S. server or to a server where the work may be performed in

the U.S., or who contributes to a U.S. infringement, is liable for violating the U.S. Copyright

Act.  Moreover, it is legally irrelevant whether or not that person *intends* that the infringing work

be "used" in the United States.  *Playboy Enterprises, Inc. v. Frena*, 839 F. Supp. 1552, 1559

(M.D. Fla. 1993).  Nevertheless, Amway qualifies its responses numerous times by the phrase

"for use in the United States."  Not only is the term meaningless in copyright law – under which

copyright infringement is determined not by "use" but by a violation of the copyright owner's

exclusive right to reproduce, distribute, and publicly perform the copyrighted work (17 U.S.C.

---

sanctioned or disciplined, including those involved in any prior litigation, as a result of the
unauthorized or unlicensed use of SOUND RECORDINGS or the unauthorized use of an
AMWAY name, logo, trademark, trade name or other intellectual property, including the nature
and date of the sanction or discipline.

[15]    In the following Responses: RFP Nos.: 10-12, 14-16, 27, 28; Interrogatory Nos.: 1- 4, 6.

§106), but the term "for use in" is also hopelessly vague:  by phrasing the response in the passive voice, Amway fails to identify the "user" (is that person the uploader, the viewer, or someone else?) and nowhere describes what constitutes "use."

**6.      Exclusion of audiovisual works "unrelated to a U.S. copyright in sound recordings."**

Amway raises this exclusion in the following: RFP Nos.: 10-12, 14-16, 27, 28; Interrogatory Nos. 1-3, all of which have been summarized above.  Not only is this limitation incomprehensible, but all of the claims in this case (or to be added) deal with the violation of U.S. copyrights in sound recordings.  The objection lacks merit.

**7.      Documents and Information Relating to Audiovisual Works "dated prior to the year in which an audiovisual work on the Schedule was first apparently created or uploaded in a country" and discovery limited to the period 2010 through October 2014.**

Amway raises these exclusions and objections in the following: RFP Nos.: 10-12, 14-16, 27, 28; Interrogatory Nos.: 1-3, all of which have been summarized above.  UMG originally sought discovery from 1998 – the date of the Settlement Agreement – to the present.  During the meet-and-confer process, UMG agreed to narrow several requests and interrogatories to the time period 2005 to the present, because the first of the located infringing videos apparently were uploaded in 2005.  Because all of the infringements were discovered within the three-year period for filing (and considering two years of tolling), they *all* fall within the statute of limitations, which cuts off only claims for infringements that a copyright owner knew of or should have known of more than three years prior to raising a claim.  *See Sieger Suarez Architectural P'ship, Inc. v. Arquitectonica Intn'l Corp.*, 998 F. Supp. 2d 1340, 1354 (S.D. Fla. 2014) ("[C]ases in the Southern and Middle Districts of Florida have applied the discovery rule in copyright infringement cases.").

Nevertheless, in numerous responses, Amway has, without explanation, imposed an arbitrary starting date of 2010 and an arbitrary end date of October 2014 to what it will produce.[16]   Amway originally objected to producing documents "on or after April 14, 2014." Then, in its Supplemental Responses, it shifted the time period to "2010 through the present." Amway's current responses shorten, without explanation, its own previously stated limitation.   In other responses where Amway and UMG have compromised on a start date of 2005, Amway has agreed to produce (whatever it will produce) through the present.   And indeed, ordinarily, discovery responses go to the present and must be supplemented.

There is no basis for this arbitrary cut-off.   These requests and interrogatories seek discovery that goes directly to Amway's knowledge of, and right and ability to control the infringing conduct, as well as to its compliance with its obligation under the  Settlement Agreement to monitor infringement.[17]   Moreover, as noted above, UMG is entitled to documents that could provide evidence of infringing conduct of which they are not currently aware.   It is completely reasonable to require Amway to produce documents beginning in the first year in which, to the Record Companies' current knowledge, an Infringing Video was uploaded. Moreover, documents generally must be produced up to the date of production (and supplemented thereafter).

Compounding and confusing Amway's meritless position, in all but one response containing the 2010 to 2014 limitation, Amway also places an ***additional*** (inconsistent) time limitation on its production, refusing to produce documents "dated prior to the year in which an

---

[16]   Inexplicably, the Response to Request 51 has an end date of November 27, 2012.

[17]   Requests 10-12 (Amway's submission and review process); 13-14 (rules and approval of use by IBOs and BSM Providers use of Amway name, trademark, etc.); 15-16 (communications with IBOs and BSM Providers of use of audiovisual works on social media); 27-28 (Sanctions of IBOs and BSM Providers for unauthorized use of sound recordings or Amway trademark, etc.); 41 (Infringed works played at convention meetings).

audiovisual work on the Schedule [of Infringing Works that UMG has identified] was first *apparently* created in a country." This limitation indicates neither which audiovisual works are referred to or the year Amway believes they "apparently" were created or uploaded, in what "country," and how Amway knows that information. In addition, it means that under the limitation, the time frame for production will differ from country to country.

### C.      A Number of Amway's Other Objections Lack Merit

In addition to the scattergun objections discussed above, many of Amway's responses contain additional meritless objections.

**Request No. 9**. This request seeks takedown notices and associated transmittal communications sent by Amway to Internet companies requesting removal of audiovisual works that Amway maintains were infringing or otherwise objectionable. The response agrees to "provide takedown notices and associated transmittal communications requesting removal of audiovisual works *identified in the Schedule* [of Infringing Works heretofore identified]." The request is broader, calling for production of takedown notices with respect to *any* audiovisual work. For the reasons discussed above, such documents are relevant to Amway's monitoring of the Internet, its knowledge of infringement, and its ability to limit infringement of its users.

**Request Nos. 15 and 16**. These requests seek documents constituting, reflecting, or referring to communications between Amway and any IBO and BSM Organizations concerning the "creation, production, distribution, duplication, sale, upload or download via social media of audiovisual works, including but not limited to those identified in the Schedule." Amway's response limits the production to audiovisual works "identified in the Schedule" and agrees to provide only documents "submitted for review."

The requests are not limited either to documents listed on UMG's Schedule of Infringing Videos or to documents "submitted for review, but rather seek *all* relevant communications. The

requests bear on Amway's right and ability to control the use of copyrighted material in the

infringing works, its knowledge of the infringements, and its relationship with its IBOs and

BSM's concerning the use of audiovisual works.  If, hypothetically, an email from Amway to an

IBO said, "Don't create an audiovisual work without music," such a document would be highly

relevant, yet would relate neither to an audiovisual work identified in the Schedule nor to an

audiovisual work submitted to Amway for review.[18]

**Request Nos. 27 and 28:**  Request No. 27 seeks documents that refer to "any sanction or

discipline imposed on an IBO, BSM organization or employee or executive of Amway based

upon unauthorized use of sound recordings."  Amway's response is limited, among other things,

to "documents relating to audiovisual works containing sound recordings for use in the United

States submitted for review from 2010 through October 2014."  Putting aside the improper

blanket limitations (discussed above), the request seeks, not only documents relating to

*audiovisual work*s containing sound recordings, but also documents referring to sanctions or

discipline relating to the unauthorized use of sound recordings *whether in an audiovisual work*

*or not*.  Again, such information is relevant to Amway's knowledge of, and right and ability to

control, infringements.  And again, Amway has no basis for limiting its production to

audiovisual works "submitted for review."

Similarly, RFP No. 28 seeks documents that reflect any sanction or discipline imposed on

an IBO or BSM organization regarding the use of the Amway name, logo or trademark – again,

whether in an audiovisual work or not.  As discussed above, Amway's protection of its own

intellectual property is relevant to Amway's right and ability to control infringing conduct, and

---

[18]   During the meet-and-confer process, Amway claimed that UMG agreed to limit the request to
documents "submitted for review."  This is not the case.  Notably, the response does not quote
such an agreement by UMG  (as other responses do when an actual limitation was proposed by
UMG).

also to knowledge of copyright infringement.  Yet Amway improperly limits its response to the use of its name, logo, trademark or trade name only on audiovisual works.

**Request No. 29:**  This request, as subsequently narrowed by UMG after meetings and conferences, seeks documents that "constitute any presentations, studies, analyses, reports, or agreements regarding efforts to monitor, track, analyze, or review social media or the Internet for references relating to Amway."  Amway objects and refuses to produce any documents.  Amway also objects to the term "relating to."  The objections are meritless.  These documents are relevant to how Amway monitors the Internet closely for references to its name such that it would have knowledge of the Infringing Videos that contain the Amway name, logo, etc.  *A&M Records, Inc. v. Napster*, Inc., 239 F.3d at 1020 n.5, cited above; *see, e.g.,* Berkley Decl., ¶¶ 63-64 & Exs. 56-57.

**Request Nos. 33, 34, 36, and 74:**  These requests seek documents regarding Amway's corporate organization.  After UMG agreed to narrow the request after meeting and conference, Amway agreed to produce "documents sufficient to show current high-level corporate organization … on a rolling basis."  While this is generally acceptable to UMG, Amway has failed to define the term "high-level."

**Request No. 46:**  This request, as modified by UMG at the meet and confer, seeks documents constituting any rule, regulation, procedure or guideline concerning the right or ability of Amway to supervise, discipline, sanction, de-sponsor or terminate its relationship with an IBO.  However, Amway limits its response to "The Business Reference Manual (aka Business Reference Guide), Rules of Conduct, Code of Ethics, Amway Sales and Marketing Plan, and IBO Registration Agreement for the United States and for those countries from which an audiovisual work on the Schedule was apparently created or uploaded…" Apart from the improper blanket objections discussed above, this response is deficient because it does not

indicate whether the identified documents constitute *all* of the rules, etc. responsive to the request.

**Request No. 52:**  By this request, UMG seeks documents relating to legal action or threatened legal action by Amway to enforce trademark, copyright, defamation or other intellectual property rights.  Amway objects and refuses to produce any documents.  For the reasons discussed above, Amway's protection of its own intellectual property rights is relevant to its knowledge of, and ability to control, infringement of the rights of others.

**Request Nos. 62 and 63:**  These requests seek documents relating to any claims, allegations or notices of copyright infringement received by Amway (No. 62); and to the removal or "takedown" of audiovisual works posted by Amway, by IBOs, or by BSM organizations to the internet or to social media (No. 63).  Amway refuses to produce any documents in response.  For the reasons stated above, this request is relevant to Amway's willfulness, prior acts of infringement, and knowledge of infringement.

**Interrogatory No. 2:**  This interrogatory asks Amway to list each audiovisual work created or submitted by an IBO or BSM organization that contains Amway's name, logo, trademark, trade name, or other intellectual property, that Amway has reviewed, including the date of review, the person who conducted the review, and the results of the review. In addition to the improper blanket objections and limitations discussed above, Amway limits its response to "audiovisual works identified ***on the Schedule to UMG's document requests***" (emphasis added.).  The Interrogatory, however, is not limited to audiovisual works listed on UMG's Schedule.  The information goes to Amway's practices that show its ability to control the content of audiovisual works.  It will also show Amway's knowledge of the use of sound recordings in audiovisual works and will bear on whether Amway permitted or prohibited that use.  This information also goes specifically to Amway's compliance with the Settlement Agreement that it

claims the Record Companies breached.  Again, the withheld information goes to Amway's knowledge of, and ability to control the infringing conduct.

**Interrogatory No. 3:**  This interrogatory asks Amway to identify each person, entity, or organization that Amway has in any way sanctioned or disciplined, including those involved in any prior litigation, as a result of the unauthorized or unlicensed use of sound recordings or the unauthorized use of an Amway name, logo, trademark, trade name or other intellectual property. As with its response to Interrogatory No. 2, Amway arbitrarily limits the response to this interrogatory to "use of an audiovisual work identified in the Schedule to UMG's document requests."  For the same reasons discussed in connection with Interrogatory No. 2, Amway should be ordered to identify those disciplined, etc. irrespective of the works listed on UMG's schedule.

**Interrogatory No. 4:**  UMG asks Amway to describe its procedures for reviewing BSM. Amway responds by incorporating verbatim certain language from various materials.  However, Amway fails to state whether its response includes *all* relevant information.

**Interrogatory No. 5:**  UMG asks Amway to "describe with particularity each and every procedure implemented to review and approve audiovisual works created and/or uploaded outside the United States."  Amway completely refuses to respond.  As noted above, a person who, outside the United States, uploads an infringing work to a United States server or made available for performance in the United States, violates U.S. copyright law.  This information goes directly to Amway's right and ability to control infringement and to its compliance with the Settlement Agreement.  Moreover, though Amway claims burden, it gives no reason why it is burdensome to provide information about its own procedures.

**Interrogatory No. 6:**  This interrogatory seeks information about Amway's procedure and action taken after March 16, 1998 to monitor, prevent or limit the unauthorized use of sound

recordings in audiovisual works.  Amway's response is deficient.  First, it states the steps it has

taken "include" those described in its response to Interrogatory No. 4 and the following list.  The

word "include" implies that its response is not exhaustive.  Moreover, the list that Amway does

include is just a litany of generic bullet points that do not provide any information to evaluate

Amway's actions.  Amway should be ordered to answer fully.

**Interrogatory No. 7:**  This interrogatory seeks information about an investigation that

Amway was obligated to conduct under the Settlement Agreement and which Amway alleges it

did conduct. FAC at pg. 25.  Amway's response contains no details but merely sets forth

incomplete, vague snippets of information.  And Amway's litany of names fails to state who was

interviewed by whom, what role each individual played, and what the result was.

**Interrogatory No. 8:**  UMG asks Amway to identify each Infringing Video listed in the

schedule attached to UMG's documents request that contained (1) images taken at any AMWAY

office or location; (2) images taken at any AMWAY-sponsored event; (3) archival images

provided by AMWAY; (4) images of any officers or executives of AMWAY; (5) images taken at

an event attended by any AMWAY officer or executive.   Amway requires that audiovisual

works using these images and trademarks be first approved.  This information thus goes directly

to Amway's knowledge of infringement.  Although Amway is in a unique position to identify its

own offices, executives, and sponsored events, its response refers to only six videos.  And the

interrogatory is in no sense burdensome – in the course of evaluating this case Amway

necessarily has or will review each audiovisual work.[19]

**Interrogatory No. 9:**  UMG seeks the identity of each person, entity, or organization

involved in creating, uploading, or otherwise disseminating the six videos that Amway concedes

are infringing.  Amway's response contains a chart purportedly providing such information.  The

[19] In all likelihood, Amway will not have to view the entire videos (a few minutes in length) to
determine the response to the interrogatory which seeks only a "list" of the videos.

chart is incomplete, failing to identify the specific names of the persons involved.  On two occasions, Amway merely identifies the person, entity, or organization involved as "plaintiffs."

**Interrogatory No. 10:**   UMG asks Amway to describe the amount and method of calculation of revenues derived in connection with the activities of certain identified IBOs and BSM Organizations.  This is relevant to the financial benefit that Amway derives from the infringing conduct.  In its response, Amway agrees to provide "a schedule of the registration and renewal fees, and the annual revenue to which Amway Corp. has been or may be entitled in connection with the sales activities in the United States by the identified IBOs beginning with the first year that a video identified in the schedule was allegedly uploaded to the internet by the IBO."  However, the response does not indicate that these are the ***only*** revenues that Amway receives as a result of the specified activities.

## CONCLUSION

For the reasons stated above, UMG's motion should be granted.

Respectfully submitted,

MITCHELL SILBERBERG &
KNUPP LLP
*Attorneys for Defendants*
Russell J. Frackman, Esq.
(*pro hac vice*)
Robert H. Rotstein, Esq.
(*pro hac vice*)
11377 W. Olympic Boulevard
Los Angeles, CA 90064
310.312.2000 (phone)
310.312.3100 (fax)

and

MITCHELL SILBERBERG &
KNUPP LLP
*Attorneys for Defendants*
J. Matthew Williams, Esq.
*(pro hac vice)*
1818 N Street, N.W., 8th Floor

Washington, D.C. 20036
(202) 355-7904 (phone)
(202) 355-7894 (fax)

and

STEVEN J. D'ONOFRIO, ESQ.
*Attorney for Defendants*
*(pro hac vice)*
5335 Wisconsin Avenue, N.W. Suite 440
Washington, DC  20015
Phone:  202-686-2872
Fax:  (240) 241-5521

and

GRAY ROBINSON, P.A.
*Attorneys for Defendants*
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Phone: (305) 416-6880
Fax: (305) 416-6887

By:  /s/ Karen Stetson
Karen Stetson
Florida Bar No: 742937
Jonathan L. Gaines
Florida Bar No: 330361

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 6, 2015, I electronically filed the foregoing with the Clerk

of the Court and on the counsel of record for Plaintiffs by using the CM/ECF system.

By: /s/ Karen Stetson