**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

ALTICOR INC.; and AMWAY CORP.,

   Plaintiffs,

v.                Case No. 6:14-cv-542-Orl-37DAB

UMG RECORDINGS, INC.; CAPITOL RECORDS, LLC; SONY MUSIC ENTERTAINMENT; and WARNER MUSIC GROUP CORP.,

   Defendants,

---

UMG RECORDINGS, INC.; CAPITOL RECORDS, LLC; SONY MUSIC ENTERTAINMENT; SONY MUSIC ENTERTAINMENT US LATIN LLC; WARNER MUSIC GROUP CORP.; WARNER BROS. RECORDS INC.; WARNER MUSIC LATINA INC.; ARISTA MUSIC; ARISTA RECORDS LLC; PROVIDENT LABEL GROUP LLC; ZOMBA RECORDING LLC; ATLANTIC RECORDING CORPORATION; and ELEKTRA ENTERTAINMENT GROUP, INC.,

   Counter Claimants,

v.

ALTICOR INC.; AMWAY CORP.; AMWAY INTERNATIONAL INC.; and DOES 1 through 20,

   Counter Defendants.

---

**ORDER**

This cause is before the Court on the following:

1. Counterclaim Defendants' Motion to Dismiss Counterclaims in Part and Supporting Memorandum (Doc. 113), filed April 10, 2015;

2. Counterclaimants' Opposition to Counterclaim Defendants' Motion to Dismiss Counterclaims in Part (Doc. 117), filed April 27, 2015;

3. Counterclaim Defendants' Motion for Leave to File a Reply in Support of Their Motion to Dismiss Counterclaims in Part (Doc. 120), filed May 7, 2015;

4. Counterclaimants' Response to Counterclaim Defendants' Motion for Leave to File a Reply in Support of Their Motion to Dismiss Counterclaims in Part (Doc. 121), filed May 7, 2015;

5. Counterclaim Defendants' Notice of Filing of Supplemental Authority in Support of Their Motion to Dismiss Counterclaims in Part [Doc. No. 113] (Doc. 123), filed June 23, 2015; and

6. Counterclaimants' Response to Counterclaim Defendants' Notice of Filing Supplemental Authority in Support of Motion to Dismiss Counterclaims in Part (Doc. 124), filed June 2, 2015.

## BACKGROUND

This complex matter is related to three additional copyright infringement actions—*UMG Recordings, Inc. v. Foley*, No. 6:14-cv-1511-Orl-37DAB ("***1511 Action***"); *UMG Recordings, Inc. v. Mahakkapong*, No. 6:14-cv-2045-Orl-37DAB ("***2045 Action***"); and *UMG Recordings, Inc. v. Puryear*, No. 6:15-cv-776-Orl-37DAB ("***776 Action***").[1]

---

[1] The Court consolidated these four actions and opened a fifth action solely for purposes of joint discovery—*In re: Record Company Infringement Litigation*, 6:15-cv-708-37DAB ("***Consolidated Action***").

Collectively, these four actions involve: 25 sound recordings that were "fixed in a tangible medium of expression" *before* February 15, 1972 ("**Fixed Recordings**"); almost 600 sound recordings that were "fixed in a tangible medium of expression" *after* February 15, 1972 ("**Registered Recordings**"); thirteen record companies ("**Record Companies**")[2] who own common law copyrights in the Fixed Recordings and federal copyrights in the Registered Recordings; approximately 1200 videos that incorporate the Fixed and Registered Recordings ("**Accused Videos**"); and almost sixty alleged copyright infringers ("**Accused Infringers**"). (*See* Docs. 93, 93-1, 93-2, 93-3, 93-4; *see also* Doc. 63.) The Accused Infringers include Amway Corp., Amway International Inc., and Alticor Inc. (collectively "**Amway**"), and independent business owners ("**IBO**"), who are supervised and regulated by Amway as part of an international "multi-level marketing company." (*See* Doc. 93, pp. 20–25, 28–33.)

Although the parties have different designations in the various actions,[3] their respective interests generally align in two groups—the Record Companies and the

---

[2] The Record Companies include: (1) UMG Recordings, Inc. ("**UMG**"); (2) Zomba Recording LLC ("**Zomba**"); (3) Capitol Records, LLC ("**Capitol**"); (4) Arista Music ("**Arista**"); (5) Arista Records, LLC; (6) Sony Music Entertainment ("**Sony ME**"); (7) Sony Music Entertainment US Latin LLC; (8) Warner Bros. Records Inc.; (9) Warner Music Group Corp.; (10) Warner Music Latina Inc.; (11) Elektra Entertainment Group Inc.; (12) Provident Label Group LLC; and (13) Atlantic Recording Corporation. (*See* Doc. 93, pp. 26–27.)

[3] Ten Record Companies initiated *776 Action* in the U.S. District Court for the Central District of California against 4 IBOs who allegedly used 16 Registered Recordings to create 15 Accused Videos. (*See 776 Action*, Doc. 1, ¶¶ 61–66, 117–27.) The *776 Action* was transferred to this Court to be resolved with this action, with the *2045 Action*—which 8 Record Companies brought against 14 IBOs who allegedly used 52 Registered Recordings to create 87 Accused Videos (*see 2045 Action*, Doc. 56, ¶¶ 35–52), and with the *1511* Action—which 11 Record Companies brought against 34 IBOs who allegedly used 243 Registered Recordings and 7 Fixed Recordings to create 285 Accused Videos (*see 1511 Action*, Doc. 133).

Accused Infringers.[4] (*See Consolidated Action*, Doc. 18.) These two groups include a subset who were parties to yet another copyright infringement action ("**1996 Litigants**"),[5] which was filed in this Court in 1996—*Arista Records, Inc. v. Amway Corporation*, No. 6:96-cv-175-Orl-18DAB ("**1996 Action**"). (*See* Doc. 63, ¶¶ 29–31.) The 1996 Action was settled in 1998, and the 1996 Litigants memorialized their settlement in a written agreement ("**Agreement**") which included procedures to be used in the event of future copyright infringement disputes. (*See* Doc. 64.)

In late 2012, the Record Company Settlors sent correspondence to the Amway Interests identifying "hundreds of links to Internet videos posted" by IBOs "throughout the world," which allegedly include "unauthorized use" of copyrighted sound recordings ("**2012 Notice**"). (Doc. 63, ¶¶ 25, 27; Doc. 93, ¶¶ 25, 27.) The Amway Interests allegedly responded to the 2012 Notice in accordance with the Agreement. (S*ee* Doc. 63, ¶ 26.) After additional correspondence in 2013 (*id.* ¶¶ 27–28), the parties unsuccessfully attempted to resolve their disputes through mediation in accordance with the Agreement. (*See id.* ¶¶ 29–31; Doc. 64.)

Anticipating that they would be sued for copyright infringement after the failed mediation efforts, on **April 4, 2014**, Amway initiated this action against the Record

---

[4] Although irrelevant to the issues addressed in this Order, the Court notes that the Record Companies and the IBOs have been further divided into subgroups based on their "shared interests" and the identity of their attorneys. (*See Consolidated Action*, Doc. 24-2; *see also* Doc. 24, pp. 3–4.) In addition, a subset of the IBOs are further categorized as Business Support Materials Suppliers ("**BSM Suppliers**"). (*See* Doc. 24, p. 4.)

[5] The 1996 Litigants include five Record Companies—UMG, Capitol, Sony ME, Zomba, and Arista ("**Record Company Settlors**"), an Amway predecessor, and eight IBOs—Tim Foley, Foley & Company, Inc., The Foley Corporation of America, Pedro and Patsy Lizardi, Lizardi & Company, Inc., Bill Childers, InterNET Services Corp. ("**Amway Settlors**"). (*See* Doc. 64.)

Company Settlors seeking damages for breach of the Agreement and breach of the duties of good faith and fair dealing ("**GF&FD**") (*see* Doc. 63, ¶¶ 1–7, 21–32, 48–58), and for judicial declarations that: (1) any Accused Videos that "were created and uploaded to a website outside the United States would not" support copyright infringement claims in this Court (*id.* at ¶¶ 7(b), 34, 104–07); (2) Amway is not liable for direct, contributory, or vicarious copyright infringement (*id.* at ¶¶ 7(f), 82–95); and (3) any asserted copyright infringement claims would be barred by various defenses, including—implied license (*id.* at ¶¶ 4, 5, 7(a), 36–47, 96–97), fair use (*id.* at ¶¶ 7(c), 98–103), copyright misuse (*id.* at ¶¶ 7(d), 108–09), laches (*id.* at ¶¶ 7(d), 110–11), estoppel (*id.* at ¶¶ 7(e), 114–16), and unclean hands (*id.* at ¶¶ 117–18). (*See id.* at 39–40.)

The Record Companies filed an Answer and a 53-page Counterclaim, which consists of nine claims and four tables that identify the specific Recordings and Accused Videos at issue in Counts I through VIII.[6] (*See* Doc. 93; *see also* Doc. 93-1 ("**Table 1**"); Doc. 93-2 ("**Table 2**"); Doc. 93-3 ("**Table 3**"); Doc. 93-4 ("**Table 4**").) Counts I and II—which are federal claims for direct, contributory, and vicarious copyright infringement—concern the Accused Videos and Registered Recordings identified on Tables 1 and 2.[7]

---

[6] The tables include nine columns. The first four columns identify the following information for each Recording: (1) the artist(s) who performed the work; (2) the title of the work; (3) the registration number; and (4) the Record Company owner. The last five columns provide information concerning the Accused Video that uses the Recording identified in the first four columns—specifically: (1) the title of the Accused Video; (2) information concerning the uploader; (3) the Uniform Resource Locator ("URL"); (4) the alleged creator of the Accused Video; and (5) the IBO allegedly responsible for the creator and uploader of the Accused Video.

[7] In accordance with sections 408(a) and 410(a) of the Act, the Record Companies allegedly obtained Certificates of Copyright Registration for all non-exempt Registered Recordings identified on Tables 1 and 2. (*See* Doc. 93, p. 27.) Generally, such certificates constitute "prima facie evidence of the validity" of the copyrights and of "the facts stated in the certificate" (17 U.S.C. § 410(c)), and copyright owners may not institute a federal

(*See* Doc. 93, pp. 49–52.) Count IX is for breach of the Agreement, and the remaining Florida common law claims—for copyright infringement (Counts III and IV), unfair competition (Counts V and VI), and conversion (Counts VII and VIII)[8]—concern the Accused Videos and the Fixed Recordings identified on Tables 3 and 4. (*Id.* at 55–65.) The Counterclaim is further organized based on the claims against Does 1 through 10, Amway Corp., and Alticor, Inc. ("**Domestic Amway**")—Counts I, III, V, and VII, and the claims against Does 11 through 20, Alticor Inc., and Amway International Inc. ("**International Amway**")—Counts II, IV, VI, and VIII.[9]

The Amway Interests moved to dismiss Counts I through VIII in part (*see* Doc.113 ("**Motion**")), and the Record Companies responded (Doc. 117). The Amway Interests then requested leave to file a reply (Doc. 120), and the Record Companies opposed the request (Doc. 121). Finally, the Amway Interests filed a notice of supplemental authority (Doc. 123), and the Record Companies responded (Doc. 124). On October 6, 2015, the Court held a hearing in the *Consolidated Action* ("**Hearing**"), during which the parties further articulated their arguments and narrowed the issues raised in their briefing on the Motion. (*See Consolidated Action*, Docs. 30, 31.) Specifically, Amway identified three

---

copyright infringement action until such certificates issue (17 U.S.C. § 411(a)).

[8] Florida law recognizes "an action for conversion" based on a "'wrongful taking of intangible interests in a business venture.'" *See CBS v. Garrod*, 622 F. Supp. 532, 536 (M.D. Fla. 1985) (quoting *In re Estate of Corbin*, 391 So. 2d 731, 732–33 (Fla. 3d DCA 1980)). The "time, effort and expense" of producing sound recordings is just such an intangible interest. *See id.* The Record Companies have adequately alleged their conversion claims in Counts VII and VIII. (*See* Doc. 93, pp. 20–24, 27–28, 64–67.)

[9] This organization accords with the description of this action as one involving infringements of sound recordings "under U.S. law" by Domestic Amway itself, "by *U.S. or North American entities and IBOs* for which" Domestic Amway is responsible, "and by *international entities and IBOs* for which Alticor Inc. is responsible, directly or through Amway International Inc. and/or Alticor Inc.'s so-called *international 'affiliates.*'" (*See* Doc. 93, p. 28 (emphasis added).)

6

issues that remain for the Court's resolution as a matter of law: (1) "whether the digital transmission of an audiovisual work can constitute a violation" of public performance rights in copyrighted sound recordings?; (2) whether a copyright owner's limited exclusive rights under the Act includes "making available" a copyrighted sound recording?; and (3) whether Florida law recognizes a "public performance" copyright for pre-1972 sound recordings? (*See Consolidated Action*, Doc. 31, p. 127.) The Court addresses each issue below and concludes that the Motion is due to be denied.

## PLEADING STANDARDS

If a counterclaim does not comply with minimum pleading requirements or otherwise fails to "state a claim to relief that is plausible on its face," the counterclaim defendant may move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 672, 678–79 (2009). If a pleading merely sets forth "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," then it should be dismissed.[10] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015). Further, factual allegations that are "merely consistent" with liability "are not facially plausible." *Ashcroft*, 556 U.S. at 678; *see Moseley v. Carnival Corp.*, 593 F. App'x 890, 892 (11th Cir. 2014) ("The mere possibility that the defendant may have acted unlawfully is insufficient."). Finally, when resolving a Rule 12(b)(6) motion, courts must not consider matters outside of the pleadings, and they must accept all well-pled factual allegations—but not legal

---

[10] Absent a motion to amend, the Court may dismiss a deficient pleading with prejudice. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (observing that district courts need not grant a party leave to amend its pleading "*sua sponte*" when the party, "who is represented by counsel, never filed a motion to amend nor requested leave to amend").

conclusions—in the pleading as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

## COPYRIGHTS

The Copyright Act ("**Act**"), provides that "[c]opyright protection subsists" in "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."[11] 17 U.S.C. § 102(a). Works of authorship include—without limitation—literary, musical, dramatic, pictorial, graphic, sculptural, and architectural works, "motion pictures and other audiovisual works," and—since 1972—*sound recordings*.[12] *See id.* Copyright protection also subsists in "derivative works"—which are works "based upon one or more preexisting works" (*id.* § 101)—but the protection "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work" (*id.* § 103(b)). *See Stewart v. Abend*, 495 U.S. 207, 223 (1990). Further, copyright protection for a derivative work that employs preexisting copyrighted material "does not extend to any part" of the derivative work in which the preexisting copyrighted "material has been used *unlawfully*." *See* 17 U.S.C. § 103(a) (emphasis added).

---

[11] "A work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. § 101.

[12] The Act preempts most state laws concerning copyrights—including for sound recordings "fixed in a tangible medium of expression" *after* February 15, 1972. *See* 17 U.S.C. § 301(a). State laws concerning sound recordings "fixed" *before* February 15, 1972" are not preempted and remain subject to state law remedies. *See* 17 U.S.C. § 301(c). Thus, copyright protections afforded to pre-1972 sound recordings are derived from state law—not federal law.

The Act accords copyright owners "exclusive" but qualified rights to "do and to authorize" another to use an original work of authorship in specified ways ("**Exclusive Rights**"). *See* 17 U.S.C. § 106; *see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 432 (1984) (noting that copyright owners have never been accorded "complete control over all possible uses" of a copyrighted work). With respect to copyrights in sound recordings, such Exclusive Rights include:

(1) reproducing the sound recording "in copies or phonorecords;"[13]

(2) preparing "derivative works based upon the" sound recording;

(3) distributing "copies or phonorecords of the" sound recording to the public by sale or other transfer of ownership, or by rental, lease, or lending;" and

\* \* \*

(6) performing the sound recording "publicly by means of a digital audio transmission."

*See* 17 U.S.C. §§ 106, 114(b).[14]

---

[13] "'Copies' are material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." *See* 17 U.S.C. § 101.

[14] Section 114(b) further limits the Exclusive Rights accorded owners of a sound recording:

The exclusive right of the owner of copyright in a sound recording under clause (1) of section 106 [–reproduction–] is limited to the right to duplicate the sound recording in the form of phonorecords or copies that directly or indirectly recapture the actual sounds fixed in the recording. The exclusive right of the owner of copyright in a sound recording under clause (2) of section 106 [–preparation of derivative works–] is limited to the right to prepare a derivative work in which the actual sounds fixed in the sound recording are rearranged, remixed, or otherwise altered in sequence or quality. The exclusive rights of the owner of copyright in a sound recording under clauses (1) and (2) of section 106 do not extend to the making or

9

Pursuant to § 501, the owner of any Exclusive Right in a copyrighted work may file an infringement action in a U.S. District Court against one who: (1) directly violates the owner's Exclusive Right ("**Direct Infringer**"); (2) intentionally induces or encourages the direct infringer's violation of the owner's Exclusive Right ("**Contributory Infringers**"); and (2) profits "from direct infringement while declining to exercise a right to stop or limit the infringement" ("**Vicarious Infringers**"). *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930–31 (2005); *Sony Corp. of Am.*, 464 U.S. at 434–35; *see also* 28 U.S.C. § 1338(a) (providing that federal courts have original and exclusive jurisdiction over claims brought under the Act).

## DISCUSSION

### I. The Record Companies Have Adequately Alleged Violations of Their Exclusive Right of Public Performance

Amway argues that the Court must dismiss the Record Companies' claims that Amway is a Direct, Vicarious, and Contributory Infringer of the Exclusive Right to publicly perform the Registered Recordings because:[15] (1) § 106(4)'s "public performance right" that is generally applicable to musical compositions and other works is inapplicable to

---

duplication of another sound recording that consists entirely of an independent fixation of other sounds, even though such sounds imitate or simulate those in the copyrighted sound recording.

[15] The Act defines "sound recordings" as "works that result from the fixation of a series of musical, spoken, or other sounds, but not including the sounds accompanying a motion picture or other audiovisual work, regardless of the nature of the material objects, such as disks, tapes, or other phonorecords, in which they are embodied." *See* 17 U.S.C. § 101. Amway does not argue that the Registered Recordings do not fit this definition; thus, under §§ 106(6) and 114(b), the Record Companies possess the Exclusive Right to perform the Registered Recordings "publicly by means of a digital audio transmission" and to "authorize" others to perform the Registered Recordings "publicly by means of a digital audio transmission."

sound recordings under § 114(a); and (2) § 106(6) does not apply because § 114(j)(5) excludes any "audiovisual work" from the "digital audio transmission" required for a public performance under § 106(6). According to Amway, the Accused Videos are "audiovisual works;" thus, and transmission of the Accused Videos online cannot support a § 106(6) claim. (Doc. 113, p. 7.)

The Record Companies counter that no authority supports Amways' sophism that the prohibition against public performance of a sound recording "by means of a digital audio transmission" is avoided by including the sound recording in an audiovisual work. (*See* Doc. 117, pp. 2–3 (quoting *Traicoff v. Digital Media Inc.*, 439 F. Supp. 2d 872, 883 (S.D. Ind. 2006).) The Record Companies argue further that the Accused Videos are not "audiovisual works." (*See* Doc. 117.) After reviewing the language of the Act and the cited case law, the Court rejects Amway's arguments.

Initially, the Court is not persuaded that the definition of "digital audio transmission" definition set forth in § 114(j)(5) is applicable to an infringement analysis under § 106(6) because the Act cautions that the terms the § 114(j) definitions are only for use in § 114.[16] *See* 17 U.S.C. § 114(j) ("As used *in this section*, the following terms have the following meanings . . . .); *see also, Creative Non-Violence v. Reid*, 490 U.S. 730, 748 n. 14 (1989) (noting that courts must strictly adhere to the language and structure of the Copyright

---

[16] The term "digital audio transmission" is used extensively in the subsections concerning broadcast transmissions on the public airways. *See* 17 U.S.C. § 114(d). The restrictive definition makes sense in this context. *See* H.R. Rep. No. 104-274 (1995) (explaining the key legislative concerns regarding "certain types of subscription and interaction audio services" and striking "a balance" with the public interests' in free over-the-air broadcasts, analog transmissions, and other non-subscription services). Indeed, the amendments to include such terms—like all copyright law—resulted from "significant changes in technology." *See Sony Corp. of Am.*, 464 U.S. at 430 n.11.

Act); *Sony Corp. of Am.*, 464 U.S. at 432 (requiring circumspection when construing the Copyright Act and adherence to the Act's concern for the general public good).

Further, applying the § 114(j)(5) definition in the manner urged by Amway is contrary to the admonition in § 103(a) that "copyright protection in preexisting material is not affected by use of such material in a "work that is based upon one or more preexisting work" such as a sound recording. *See id.* § 101 (defining "derivative works"). Indeed, copyrights in a preexisting work are "completely independent of" an audiovisual work that incorporates the preexisting work." *See Traicoff v. Digital Media, Inc.*, 439 F. Supp. 2d 872, 883 (S.D. Ind. 2006) (noting that "the copyright of an independent and preexisting sound recording" cannot be invalidated by "incorporating" the sound recording "into an audiovisual work").

Here, the Registered Recordings are "preexisting material" that must be distinguished from any audiovisual works in which they are incorporated—including the Accused Videos.[17] *See Traicoff*, 439 F. Supp. 2d. at 883; *see also Stewart*, 495 U.S. at 216–17 (rejecting argument that Court should "read into the Copyright Act a limitation on the statutorily created rights of the owner of an underlying work"). Accordingly, the Court rejects Amways' argument that—based on § 114(j)(5)—the Record Companies' "public performance" claim under § 106(6) fails as a matter of law.

---

[17] The Court also is not persuaded that the portions of the Accused Videos that incorporate the Registered Recordings constitute "audiovisual recordings" because—according to the allegations of the Counterclaim—the Registered Recordings were unlawfully incorporated into the Accused Videos. *See* 17 U.S.C. § 103(a) (providing that copyright protection for a derivative work that employs preexisting copyrighted material "does not extend to any part" of the derivative work in which the preexisting copyrighted "material has been used *unlawfully*." (emphasis added).)

## II. The Exclusive Rights Provided Under the Act Do Not Include the Right to Make a Work "Available"

Amway argues that the Court should dismiss any claims that are based on allegations that the Registered Recordings were made available to the public by uploading the Accused Videos to the Internet. (*See* Docs. 113, 117.) Although the Court agrees that the Act does not confer a "making available" copyright under § 106, the Court does not agree that relief is warranted under Rule 12(b)(6). Notably, the act of making a copyrighted work available for the use of a direct infringer is relevant to the Record Companies' indirect infringement claims against Amway. *See Atlantic Recording Corp. v. Howell*, 554 F.Supp.2d 976, 983 (D. Az. 2008); *Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1225 (D. Minn. 2008) (stating that although dissemination needs to be proven to meet the distribution standard in the act, the proof need not be direct and can come from circumstantial evidence). Thus, the Motion is due to be denied with respect to Amway's "making available" argument. *See Warner Bros. Records, Inc. v. Payne,* 2006 WL 2844415, *2 (W.D. Tx. 2006) (declining, at the pleading stage, to reject "making available" theory a possible ground for imposing liability).

## III. This Court Cannot Find that a Sound Recording Public Performance Copyright Exists Under Florida Common Law

Amway argues that the Court must dismiss Counts III and IV in part because Florida common law does not recognize a public performance right with respect to sound recordings. (*See* Doc. 113 p. 13.) Aside from a single decision from this Court,[18] the

---

[18] The Court is not persuaded that *CBS, Inc v. Garrod*, 622 F.Supp. 532 (M.D. Fla 1985) supports the Record Companies' argument. The *Garrod* decision more compellingly supports the proposition that record piracy supports larceny and theft claims because Florida recognizes a "protectable property interest" in the "professional investment of time, skill, and money" that is expended by record producers.

Recording Companies have cited no controlling case or statutory law that would permit this Court to find that Florida common law recognizes a public performance right with respect to sound recordings. Further, the Court's independent research revealed no such law. Under such circumstances, I must agree with the Honorable Darrin P. Gayles of the U.S. District Court for the Southern District of Florida that this Court should refrain from creating new law for Florida. *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 13-23182-CIV, 2015 WL 3852692, *5 (S.D. Fla. 2015). Although the Court agrees with Amway's argument concerning Florida law, it again disagrees that partial relief under Rule 12(b)(6) is warranted. Accordingly, the Motion is due to be denied.

**IV.    Does 1 through 20**

In a footnote, the Amway Interests argue that the Court should dismiss Does 1 through 20 because fictitious party pleading is disallowed in federal courts. (*See* Doc. 113, p. 1 n.1.) Federal Rule of Civil Procedure 10(a) requires that the title of a complaint include the names of "all the parties," and the U.S. Court of Appeals for the Eleventh Circuit discourages fictitious party pleading as a practice that is contrary to the public's right in open judicial proceedings. *See Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 684–85 (11th Cir. 2001). Nonetheless, reference to a fictitious party may be permitted if it is mere "surplusage" (*see Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010)), or the fictitious party will be identified through discovery (*see Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354 (S.D. Fla. 2009)).

Here, the Does 1 through 20 are effectively identified for pleading purposes based on the Record Companies' identification in Tables 1 through 4 of specific creators and uploaders of the Accused Videos. Identification of the Doe Defendants is further

14

discerned based on the IBOs named as Defendants in the 2045, 1511, and 776 Actions. Thus, under the unique circumstances presented here, the Court does not find it necessary to strike Does 1 through 20 under Rule 12(f) or to dismiss any claims based on Rule 10(a). *See Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1318, n.4 (11th Cir. 2015) (noting that the court had simply ignored the improperly named fictitious parties).

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Counterclaim Defendants' Motion for Leave to File a Reply in Support of Their Motion to Dismiss Counterclaims in Part (Doc. 120) is **DENIED**.

2. Counterclaim Defendants' Motion to Dismiss Counterclaims in Part and Supporting Memorandum (Doc. 113) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on December 10, 2015.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record